Allen Ray WARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00700–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 10, 2003.

---

Thomas W. McQuage, Galveston, TX, for Appellant.

Michael J. Guarino, Criminal District Attorney–Galveston County, M. Elizabeth Gunn, Assistant District Attorney, Galveston, TX, for Appellee.

Panel consists of Chief Justice SHERRY RADACK and Justices ALCALA and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

A jury found appellant, Allen Ray Ward, guilty of aggravated assault with a deadly weapon, and the trial court assessed pun-

ishment at 30 years' confinement. We affirm.

## BACKGROUND

### 1. Procedural Background

The appellant was charged by an indictment, which alleged that appellant "did then and there intentionally and knowingly threaten Nathan Joseph with imminent bodily injury and did then and there use and exhibit a deadly weapon, to-wit: a handgun." The indictment also contained two prior felony enhancements. Appellant pleaded not guilty to a jury who found appellant guilty as indicted. Additionally, the jury negatively answered a special issue, which asked whether appellant used or exhibited a deadly weapon during the commission of the offense.[1] After the jury's verdict, but before sentence was pronounced, appellant moved for a mistrial, which the trial court granted. After a second trial, the subject of this appeal, appellant was again found guilty as charged in the indictment. After the second trial, the State did not submit a deadly weapon special issue. The trial court assessed punishment and this appeal followed.

### 2. Factual Background

In 2001, and intermittently for the previous four or five years, appellant lived with his wife Patricia, and her three children, including 18–year–old Nathan Joseph. On the afternoon of May 28, 2001, Nathan saw appellant enter the home for about two minutes, and then leave. Shortly thereafter, Nathan's mother arrived, crying and apparently upset. She either told Nathan that appellant had "jumped on her," or

Nathan inferred as much from her disposition.

Nathan left in his mother's car with the intention of finding appellant and fighting him. Nathan spotted appellant a few blocks away, so Nathan got out of his car, and appellant started walking toward Nathan. When appellant was about 20 feet away from Nathan, he pulled out a gun from the back of his pants and fired it more than once. When appellant began shooting, Nathan turned and fled home on foot. Nathan testified that he saw appellant pull the gun and point it at him, and that he heard the gun fire—he did not see appellant actually pull the trigger.

Nicole Joseph, appellant's adult daughter, testified that she too saw appellant briefly enter the home and leave before her mother came into the house crying. Her mother told her to go find Nathan, so she drove away in a car owned by her friend, Beth Goldblum. Nicole saw the car that Nathan had been driving parked at a nearby intersection with the door open. She then saw appellant running down the street toward the car in which Nicole and her friend Beth were sitting. Appellant began firing the gun at Nicole and Beth. Nicole decided to run over appellant, but she stopped when the police arrived.

As the police approached the scene, Nicole saw appellant run over to the passenger side of a truck owned by his brother-in-law, who lived in the immediate vicinity with appellant's sister. Mr. Ward's brother-in-law drove the truck away just prior to the arrival of the police and returned as appellant was being arrested.

---

1. The special issue asked the jury the following question:

   Do you, the Jury, affirmatively find beyond a reasonable doubt, that the Defendant, ALLEN RAY WARD, used or exhibited a dead-

   ly weapon, to-wit: a handgun, during the commission of the offense of which you have found him guilty?

   The jury answered, "We do not so affirmatively find."

Beth Goldblum testified that she and Nicole were looking for Nathan when they spotted his car parked in the middle of the street with the door open. She then saw appellant, who said, "You want some of me?" and then began shooting towards Beth and Nicole. She, too, testified that she saw appellant run toward his sister and brother-in-law's home and saw the brother-in-law drive away as she and Nicole were talking to the police.

The police arrested appellant as he walked from behind his sister and brother-in-law's house and was identified by his wife. No weapon, bullets, or spent casings were recovered from the scene.

Appellant's sister testified that she didn't hear any shots or see any weapon. Appellant's wife testified that she saw her children leave to look for appellant and then heard "something" like shots or fireworks.

## SUFFICIENCY OF THE EVIDENCE

■ In his first point of error, appellant contends the evidence is legally and factually insufficient to show that he committed an aggravated assault against Nathan Joseph. Instead, appellant argues that the evidence shows that he discharged the weapon against Nicole Joseph and Beth Goldblum. In evaluating legal and factual sufficiency, we follow the usual standards of review. *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000) (legal sufficiency); *King v. State,* 29 S.W.3d 556, 563 (Tex.Crim.App.2000) (factual sufficiency).

### 1. Legal Sufficiency

Appellant argues that there is no evidence to show that he assaulted Nathan Joseph because Nathan testified that he did not actually see appellant discharge the gun. However, the indictment did not require proof that the weapon was discharged; it required the State to show that appellant "did then and there intentionally or knowingly threaten Nathan Joseph with imminent bodily injury and did then and there *use or exhibit* a deadly weapon, to wit: a handgun . . ." (Emphasis added).

■ Nathan testified that appellant pointed a handgun at him, and that as he turned to flee, he heard shots. He also testified that he felt threatened when appellant pointed the gun *at* him and that he ran because he "didn't want to get shot." Aiming a deadly weapon at a supposed victim is sufficient evidence of a threat to sustain an aggravated assault conviction. *Anderson v. State,* 11 S.W.3d 369, 375–76 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *see also Rodriguez v. State,* 955 S.W.2d 171, 174 (Tex.App.-Amarillo 1997, no pet.) (pointing a gun at a supposed victim sufficient evidence of threat for aggravated assault).

We hold that the evidence is legally sufficient.

### 2. Factual Sufficiency

In support of his claim that the evidence is factually insufficient, appellant points to the testimony of Beth Goldblum and Nicole Joseph, wherein they testified that appellant shot at them. Appellant argues that the great weight of the evidence shows that Beth and Nicole, not Nathan, were the intended victims of the assault.

We disagree. While Beth and Nicole's testimony may show that they, too, were assaulted by appellant, it does not necessarily negate Nathan's testimony that appellant pointed the gun at him and fired. The jury's finding that Nathan was the victim of the aggravated assault is factually sufficient.

We overrule point of error one.

## COLLATERAL ESTOPPEL

■ In point of error two, appellant contends that because the jury in the first trial, in answering the deadly weapon special issue, did not affirmatively find that appellant used or exhibited a deadly weapon during the commission of the offense, the doctrine of collateral estoppel should prevent the State from retrying him for aggravated assault with a deadly weapon. Appellant essentially argues that the jury's negative finding on the deadly weapon special issue "amounted to a judgment of acquittal" because the State is collaterally estopped from proving an element of the crime, i.e., that a deadly weapon was used to commit the aggravated assault.

■ The Fifth Amendment guarantee against double jeopardy encompasses collateral estoppel. *Ladner v. State*, 780 S.W.2d 247, 250 (Tex.Crim.App.1989). When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The State argues that the doctrine of collateral estoppel does not apply in this case because there was no "valid and final judgment" because appellant's motion for mistrial was granted. We agree.

■ In *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996), the court noted that, as a general principle, a mistrial granted at the defendant's request poses no prohibition against retrial under either the federal or state constitutions. The reasoning underlying the rule is that a defendant's motion for mistrial is considered "a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact." *Id.* at 698 (quoting *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). However, the court noted an exception to the general rule in cases in which the State purposefully forces the termination of a trial in order to repeat it under more favorable circumstances. *Id.* at 698–99. In such instances, even in the event of a defendant's successful motion for mistrial, the double jeopardy provisions are violated. *Id.*

In this case, there is nothing in the record to show that the exception in *Bauder* should apply—there was no prosecutorial misconduct to induce a mistrial. Instead, appellant's motion for mistrial was based on the apparent inconsistency between the guilty verdict on the aggravated assault with a deadly weapon charge and the jury's refusal to affirmatively find that appellant used or exhibited a deadly weapon in response to the special issue.

Appellant, however, contends that his motion for mistrial did not preclude him from raising his collateral estoppel argument because he had no other remedy or recourse "to preserve the benefit of the exculpatory jury finding." *See Ex parte Fife*, 49 S.W.3d 35, 38 (Tex.App.-Fort Worth 2001, pet. ref'd) (stating that "if a defendant had no other recourse or remedy other than a mistrial, double jeopardy will prevent retrial").

■ We disagree. Appellant's positions rest on the assumption that the negative deadly weapon finding must, necessarily, be of some "benefit" to him. Such is not necessarily the case. In *U.S. v. Powell*, 469 U.S. 57, 64, 105 S.Ct. 471, 476–77, 83 L.Ed.2d 461 (1984) and its Texas progeny,[2] the courts held that the apparent in-

---

2. *See Ward v. State*, 938 S.W.2d 525, 528 (Tex.App.-Texarkana 1997, pet. ref'd); *Moranza v. State*, 913 S.W.2d 718, 724 (Tex.App.- Waco 1995, pet. ref'd); *Sauceda v. State*, 739 S.W.2d 375, 376 (Tex.App.-Corpus Christi 1987, pet. ref'd).

consistency within a multi-count verdict does not automatically constitute reversible error—the only issue on appeal is whether there is sufficient evidence to support the verdict upon which the conviction is based. In *Powell,* the Court noted that an internally inconsistent verdict is not necessarily an implicit acquittal. "The most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." 469 U.S. at 64–65, 105 S.Ct. 471 at 476, 83 L.Ed.2d 461, (*quoting Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). The Court further noted that apparent inconsistencies within a jury verdict are "often a product of jury lenity," or may show error in favor of the defendant or the State. 469 U.S. at 65, 105 S.Ct. at 477. "Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred but it is unclear whose ox has been gored." *Id.* Therefore, the Court held that "the best course to take is simply to insulate jury verdicts from review on [the ground of an inconsistent verdict.]" 469 U.S. at 69, 105 S.Ct. at 479.

Thus, under *Powell,* had the first case been tried to judgment and appealed, we would have reviewed the sufficiency of the evidence to support the conviction for aggravated assault with a deadly weapon— we would not have reversed based on the apparent inconsistency between the verdict of guilt and the negative deadly weapon finding.

If we were to hold that the negative deadly weapon finding barred appellant's retrial for aggravated assault with a deadly weapon, we would be granting the appellant the power, by filing a motion for mistrial, to turn non-reversible error in the first trial into an acquittal. Such a holding would, in effect, be an attempt to overrule *U.S. v. Powell,* which we cannot do.

Accordingly, we overrule point of error two.

We affirm the judgment.