02-11-337--343-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00337-CR

NO. 02-11-00338-CR

NO. 02-11-00339-CR

NO. 02-11-00340-CR

NO. 02-11-00341-CR

NO. 02-11-00342-CR

NO. 02-11-00343-CR

 

 


 
 
 Charles Franklin Woodruff
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 90th
District Court OF Young COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
five issues, appellant Charles Franklin Woodruff appeals his convictions for three
counts of indecency with a child by contact, two counts of sexual assault, one
count of aggravated assault with a deadly weapon, and one count of aggravated
sexual assault of a child.[2]  We affirm.

Background
Facts

          Rebekah
Woodruff and Paul N. are the parents of C.N. (Courtney), who was born in
December 1989, and B.N. (Brandy), who was born in September 1992.[3] 
Rebekah and appellant are the parents of W.W. (Whitney), who was born in July
2004.  When Rebekah and Paul divorced, Courtney and Brandy lived with Rebekah,
and they eventually also lived with appellant and Whitney.  Paul married another
woman, Mindy N.

          Courtney,
who was twenty-one years old at the time of the trial in July 2011, is autistic
and is mildly mentally retarded.  Rena Fore, who worked with special needs
students for Graham ISD, developed a relationship with Courtney when Courtney
became a freshman in high school.  Fore knew that Courtney was autistic, but
Fore did not believe that Courtney had trouble separating fantasy from reality.
 Michelle McGee also worked with special needs students in Graham, and she had
known Courtney since Courtney was in elementary school.  According to McGee, Courtney
was a “high-functioning autistic child.”

           On
April 17, 2008, when Courtney was eighteen years old and was a junior in high
school, she acted poorly at school.  Fore and McGee talked to Courtney about
her behavior.  Courtney told them that she had been sexually abused by
appellant.  McGee called Rebekah.  Rebekah came to the school, and Courtney
told her, in much more detail, what she had said to McGee and to Fore.  Rebekah
asked Courtney questions, and during those questions, according to Fore, Courtney
pointed to “[h]er breast area and her bottom.”  To Fore, Rebekah appeared
to be startled and disturbed.  Rebekah eventually left the school, and McGee
called a law enforcement hotline.

          The
next day, Adult Protective Services (APS) contacted Jeff Smith, an investigator
with the Graham Police Department, about Courtney’s outcry of sexual abuse.  Officer
Smith learned that Rebekah was not being cooperative with APS’s investigation into
the abuse and that Rebekah did not believe that Courtney’s allegations were
true.  In fact, on April 18, 2008, Rebekah and Courtney both signed a document
stating that Courtney did not want to be questioned by authorities without Rebekah’s
consent and without Rebekah’s presence.

          Between
April 17 and April 22, 2008, Courtney left the house where Rebekah and
appellant lived and moved in with her biological father, Paul, and her
stepmother, Mindy.  Shortly after Courtney moved in with Paul and Mindy, Mindy
took Courtney back to Graham so that Courtney could attend a prom.  On the way
to Graham, Courtney talked to Mindy about appellant’s putting his penis in Courtney’s
“hole.”  After the prom, Mindy took Courtney to a Domino’s Pizza restaurant to
meet appellant because appellant had said that he wanted to take a picture of
Courtney.  At the store, Mindy heard appellant asking Courtney about “her body
parts” and about whether she wanted to talk to the police.

          Mindy
brought Courtney to an interview about her allegations of sexual abuse.  Upon
the request of APS, Dr. Brandon Bates, a licensed clinical psychologist, performed
a psychological evaluation of Courtney in June 2008.  Dr. Bates explained that
prior to his evaluation of Courtney, he knew, based on records that he had
received from another doctor and from Courtney’s school, that she was autistic,[4]
that she was mildly mentally retarded, and that she had been enrolled in
special education programs throughout her school years.

          Based
on his evaluation, Dr. Bates concluded that Courtney’s “adaptive functioning age”
was seven years and three months, although Courtney was actually eighteen years
old at the time of the evaluation.  Nonetheless, Dr. Bates opined that Courtney
was able to speak in a logical and coherent manner, that she responded to
questions appropriately, that she had the capacity to remember events and
narrate facts, and that she was capable of knowing the difference between the
truth and a lie.  Dr. Bates opined that Courtney’s autism and mental
retardation rendered her incapable of consenting to a sexual encounter.

          At
trial, Courtney testified that appellant, who she called “Charlie,” had touched
her with his penis on her “boobs,” vagina, and “butt.”  Specifically, she testified
that appellant had put his penis in her “butt,” which hurt her badly.

          For
years, Brandy denied, on several occasions, that appellant had sexually abused
her or Courtney.  But Brandy eventually told her fiancé, Dalton, about being
sexually abused by appellant.  Dalton committed suicide in March 2010 after he and
Brandy broke up.  It was Dalton’s last wish for Brandy to tell someone about
the abuse, so Brandy called Matt Pruitt, a deputy with the Young County
Sheriff’s Office.[5]  Deputy Pruitt and his wife,
Tracy, went to a park to meet with Brandy.  Brandy told them that appellant had
sexually abused her, and she revealed details about an incident that had
occurred with appellant and “Mack,” her boyfriend before she was engaged to
Dalton.

          At
trial, Brandy said that she had initially denied appellant’s sexual abuse of
her because she was scared of appellant,[6] she thought that she was
the only one being abused, and she believed that she was protecting her
sisters.  Brandy testified that over the course of several years while she
lived with appellant, he had touched her vagina and her breasts with his hands,
had put his penis in her vagina on more than one occasion, and had also put his
penis in her mouth.  Brandy also said that appellant had forced her to watch
pornography with him.

          Brandy
and Mack each testified about a night in 2008 when they met appellant at Brandy’s
stepgrandmother’s empty house.  At the time, Brandy and Mack were fifteen years
old.  Appellant let them drink alcohol.[7]  Appellant told them to
exchange the alcohol between each other’s mouths as they were kissing.  Later,
appellant told Mack to take off his shirt so that appellant could perform an
Indian healing ritual.[8]  After appellant started
chanting over Mack and Mack pushed appellant off of him, appellant pulled out a
gun and asked Mack if he was scared.  At that time, Mack said that he was not
scared (although Mack testified at trial that he was scared).  Appellant rubbed
the gun around Mack’s head, face, and shoulder.

          Later
that night, appellant and Mack went outside and sat in a pickup, where
appellant again pointed the gun at Mack.  Appellant told Mack that he wanted
Mack and Brandy to have sex while appellant watched.  Mack initially resisted. 
But because Brandy was in the house, because Mack was scared for her
well-being, and because appellant had said that he would go get her only if
Mack got “hard,” Mack took off his shorts and tried to arouse himself.  When
Mack could not do so, however, appellant “reached over and put his hand on the
base of [Mack’s] penis and moved his fingers around kind of in a stroking
motion.”  Mack still could not become aroused, and appellant asked Mack whether
appellant needed to “use [his] mouth,” which angered Mack.  Mack shoved
appellant, and Mack and appellant began yelling at each other.  Appellant went
back into the house and told Mack that if he got out of the truck, a “banshee”
would attack him.  Appellant “let two or three rounds off in the air and
disappeared into the house.”  Eventually, Mack went back into the house, and he
and Brandy stayed in a locked bedroom the rest of the night.  Mack later told
Deputy Pruitt what had happened.

          Whitney
eventually left appellant and Rebekah’s home, and she began living with Donna
Dragoo, a foster parent, in April 2010.  While living in Dragoo’s home, Whitney
told Dragoo that appellant had sexually abused her.

          Grand
juries indicted appellant for three counts of indecency with a child by contact
(for touching Whitney’s genitals, Mack’s genitals, and Brandy’s genitals while
intending to arouse or gratify a person’s sexual desire), two counts of sexual
assault (for penetrating Courtney’s anus by his sexual organ without her
consent when she was an adult and for penetrating Brandy’s mouth with his
sexual organ when she was under seventeen years old), one count of aggravated
assault with a deadly weapon (for intentionally or knowingly threatening Mack
with imminent bodily injury while using a gun), and one count of aggravated
sexual assault of a child (for penetrating Brandy’s sexual organ with his own
sexual organ when she was younger than fourteen years old).  Before appellant’s
trial began, he agreed to allow the cases arising from his acts in Stephens
County to be tried in Young County together with the cases that arose there.

          Appellant
pled not guilty to each charge.  At his trial, after the jury heard evidence
and arguments from the parties, it deliberated for less than an hour before
convicting him of each offense.  In the punishment phase of the trial, appellant
pled true to a repeat offender paragraph that six of his indictments contained;
he therefore admitted that he had been previously convicted of indecency with a
child.  The jury assessed twenty years’ confinement for appellant’s sexual
assault of Courtney and confinement for life for each of the six other
offenses.  The trial court sentenced appellant in accordance with the jury’s
verdicts, and it ordered all of the sentences, except for the sentence for
aggravated assault with a deadly weapon, to run consecutively.  Appellant
brought these appeals.  

Evidentiary
Sufficiency

          In
his second and fourth issues, appellant argues that the evidence is
insufficient to sustain two of his seven convictions.  Specifically, he contends
that the evidence is insufficient to support his conviction for indecency with
a child regarding sexual contact with Whitney and to support his conviction for
aggravated assault with a deadly weapon.

          In
our due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v. State, 330
S.W.3d 633, 638 (Tex. Crim. App. 2010).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.  

          The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

Indecency
with a child

          To
obtain appellant’s conviction for indecency with a child concerning his sexual
contact with Whitney, the State had to prove that Whitney was younger than
seventeen years old when appellant, with the intent to arouse or gratify the
sexual desire of any person, touched any part of her genitals.  See Tex.
Penal Code Ann. § 21.11(a)(1), (c)(1).  Appellant contends that neither
Whitney’s outcry statements nor her testimony at trial establish that he
touched her genitals.

          The
evidence showed that in April 2010, Whitney talked to another child in Dragoo’s
foster home about the “love game,” which Whitney, who was five years old at the
time, later nervously described to Dragoo as pretending to be naked in bed
while kissing and touching private parts.  Dragoo asked Whitney where she had
learned of the love game, and Whitney said, “I see it in movies my daddy tells
me to watch with him.”

          A
couple of weeks later, Whitney and Dragoo were playing outside when a neighbor
came outside without a shirt on.  Whitney said that she wished that the man
“was naked and had no underwear on and his wife had no bra on and they were
kissing and touching people.”  Whitney also told Dragoo that appellant had told
her that love meant being “naked in bed and kissing and touching each other.”

          Later
in 2010, Whitney talked in Dragoo’s home about her “tickle spot,” which Whitney
said was her “private spot.”  Whitney said that she learned about the “tickle
spot” from appellant.  Whitney told Dragoo that appellant “would pull [Whitney’s]
pants down and touch [her] there,” that this usually happened when Whitney
kissed appellant goodnight, and that Rebekah would see appellant touching
Whitney and say, “Honey[,] please stop doing that to her.  Don’t touch her
there.”  Whitney testified at trial that appellant had touched her on the “[f]ront”
of her “private part.”

          Viewing
this evidence in the light most favorable to the jury’s verdict of conviction,
and allowing for the fact that the jury could have drawn reasonable inferences
from the evidence, we conclude that the evidence is sufficient to establish
that appellant touched Whitney’s genitals.  Although Whitney spoke in imprecise
terms in her outcries and in her testimony, she was only five and six years old,
respectively, at the time of her April and September 2010 outcries, and she was
only seven years old at the time of the trial.  Thus, she could not have been
expected to use exacting anatomic detail.  See Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990) (stating that children are not expected
to testify with the “same clarity and ability as is expected of mature and
capable adults”); Wallace v. State, 52 S.W.3d 231, 235 (Tex. App.—El
Paso 2001, no pet.)  (“As a matter of public policy, the appellate courts of
this state do not expect child victims of crime to testify with the same
clarity and ability as is expected of mature and capable adults.”).

          Despite
the imprecision in Whitney’s language, a rational jury could have determined beyond
a reasonable doubt that appellant touched her genitals because there was direct
evidence that he touched the front of her “private part” after pulling her
pants down.  See Mounce v. State, 432 S.W.2d 104, 107 (Tex. Crim. App.
1968) (holding that the “testimony that the [defendant] placed his hands on the
sexual private parts” of the victim was sufficient to prove that he touched her
vulva); Thomas v. State, 399 S.W.2d 555, 556 (Tex. Crim. App. 1966)
(holding that a seven-year-old girl’s testimony that the defendant touched her
“privates” after taking her panties off was sufficient to establish that the
defendant touched the girl’s vulva); Mallet v. State, 9 S.W.3d 856,
863–64 (Tex. App.—Fort Worth 2000, no pet.) (concluding that the victim’s
testimony that the defendant’s penis went inside her “butt” or “backside” was
sufficient to prove that it penetrated her anus); Bryant v. State, 685
S.W.2d 472, 474–75 (Tex. App.—Fort Worth 1985, pet. ref’d) (holding that the
evidence was sufficient to establish that the defendant touched the victim’s
vagina when the victim testified that the defendant had put his hands
underneath her underpants and had touched her between her legs).

          Also,
the jury heard other evidence, including facts from Whitney’s outcries, that
substantiated appellant’s sexual interest in children.  The jury could have considered
this evidence when determining what Whitney meant when she testified that
appellant had touched the front of her “private part.”  See Wise v. State,
364 S.W.3d 900, 907 (Tex. Crim. App. 2012) (holding that a jury could consider
the defendant’s history of sexually assaulting children when deciding whether
he knowingly possessed child pornography on his computer).

          For
these reasons, we hold that the evidence is sufficient to sustain appellant’s
conviction for indecency with a child by sexual contact of Whitney’s genitals,
and we overrule his second issue.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Isassi, 330 S.W.3d at 638.

Aggravated
assault with a deadly weapon

          To
obtain appellant’s conviction for aggravated assault with a deadly weapon
against Mack, the State had to prove that appellant intentionally or knowingly
threatened Mack with imminent bodily injury and used or exhibited a deadly
weapon.  See Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2) (West 2011). 
Appellant argues that there is “no evidence that [he] threatened [Mack] with
imminent bodily injury and that a gun was exhibited as part of that threat.”  We
disagree.

          As
summarized above, Mack testified that at Brandy’s stepgrandmother’s home, in an
apparent effort to alleviate Mack’s chest pains, appellant had Mack lie on a
bed with his shirt off, and appellant then put a pistol on Mack’s shoulder, head,
and face.  Appellant asked Mack, “Are you scared,” and when Mack said that he
was not scared, appellant “got angry.”  Appellant then repeated his question,
and when Mack said again that he was not scared, appellant left the room.[9] 
Later, outside in a pickup truck, appellant again pointed the pistol at Mack.  After
appellant touched Mack’s genitals and appellant and Mack both became angry,
appellant “let two or three rounds off in the air.”  Toward the end of Mack’s
testimony on direct examination by the State, the following exchange occurred:

          Q. And your testimony was that he used that gun
and he threatened you?

          A. Yes, ma’am.

          Q. Do you believe that gun was a deadly weapon?

          A. Yes, ma’am.

          Q. Were you -- the threat, were you in fear of imminent
bodily injury?

          A. Yes, ma’am, I was.

          The
implication from appellant’s argument is that he intended to do something other
than threaten Mack with imminent bodily injury when he pointed the pistol at
Mack on more than one occasion.  But even if the record raised that conflicting
inference, in determining the sufficiency of the evidence to show a defendant’s
intent, we Amust presume—even if it does not
affirmatively appear in the record—that the trier of fact resolved any such
conflict in favor of the prosecution, and [we] must defer to that resolution.@  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

          Viewing
the evidence in the light most favorable to the jury’s guilty verdict, we
conclude that a rational jury could have discerned from Mack’s testimony,
beyond a reasonable doubt, that appellant intended to threaten Mack with
imminent bodily injury by pointing the gun at him.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638. 
Specifically, along with other evidence, the jury could have inferred this
intent from the fact that appellant became angry when Mack said that he was not
scared.  The jury could have also inferred appellant’s intent from his acts
with the pistol.  See Ward v. State, 113 S.W.3d 518, 521 (Tex. App.—Houston
[1st Dist.] 2003, pet. ref’d) (“Aiming a deadly weapon at a supposed victim is
sufficient evidence of a threat to sustain an aggravated assault conviction.”);
De Leon v. State, 865 S.W.2d 139, 142 (Tex. App.—Corpus Christi 1993, no
pet.) (“The mere presence of a deadly weapon, under proper circumstances, can
be enough to instill fear and threaten a person with bodily injury.”); Gaston
v. State, 672 S.W.2d 819, 821 (Tex. App.—Dallas 1983, no pet.) (op. on
reh’g) (“It was the presence of the gun in appellant’s hand that instilled fear
in complainant and made her feel threatened with bodily injury.”); see also
Danko v. State, No. 02-09-00386-CR, 2011 WL 167071, at *3 (Tex. App.—Fort
Worth Jan. 20, 2011, pet. ref’d) (mem. op., not designated for publication) (“Danko’s
display of a gun was sufficient to establish the required threat of imminent
bodily harm.”).  We overrule appellant’s fourth issue.

Admission of Evidence

          In
his first issue, appellant asserts that the trial court erred by admitting
evidence about “extraneous offenses” that he committed when he sexually abused Courtney.[10] 
He asserts that this alleged error requires reversal of all of his
convictions.  He admits, however, that he did not object to the admission of
such alleged extraneous evidence.

          To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State,
319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address
the merits of an issue that has not been preserved for appeal.  Wilson v.
State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g). 
Preservation of error is a systemic requirement.  Id. at 473–74; Ford
v. State, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

          Appellant
recognizes these principles of error preservation and acknowledges that
normally, a party forfeits error in the admission of evidence by failing to
object at the time the evidence is offered.  See Saldano v. State, 70
S.W.3d 873, 889 (Tex. Crim. App. 2002) (“We have consistently held that the
failure to object in a timely and specific manner during trial forfeits
complaints about the admissibility of evidence.  This is true even though the
error may concern a constitutional right of the defendant.”) (footnote
omitted); Reyes v. State, 361 S.W.3d 222, 229 (Tex. App.—Fort Worth
2012, pet. ref’d).  Nonetheless, citing Almanza v. State, a case
concerning error in a jury charge, appellant contends that despite his lack of
an objection, we should review whether egregious error has occurred.  See
686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).

          Appellant
has not directed us to any decision adopting the Almanza jury-charge
standard to a complaint about the admission of evidence.  To the contrary, we
have located decisions that refused to apply Almanza to unpreserved
evidentiary complaints.  See Tapps v. State, 257 S.W.3d 438, 448 (Tex.
App.—Austin 2008) (op. on reh’g) (“We see no legal basis for extending the
egregious error theory relating to unobjected-to jury charge error to the
admission of unobjected-to evidence.”), aff’d, 294 S.W.3d 175 (Tex.
Crim. App. 2009); Love v. State, No. 13-01-00342-CR, 2002 WL 34230836,
at *1 (Tex. App.—Corpus Christi July 3, 2002, pet. ref’d) (mem. op., not
designated for publication) (explaining that “Almanza . . . dealt with
jury charge error, not error in the admission of evidence, and [is] inapplicable
to” evidentiary complaints).

          We
hold that appellant forfeited his complaint about the admission of allegedly
extraneous evidence by failing to object at trial.  See Devoe v. State,
354 S.W.3d 457, 475 (Tex. Crim. App. 2011) (“Appellant did not object at trial
to the admission of the complained-of evidence on constitutional or other
grounds. Therefore, he presents nothing for our review.”).  We overrule
appellant’s first issue.

          In
his third issue, appellant argues that his conviction for indecency
with a child regarding sexual contact with Whitney should be reversed because
the trial court erred by failing to “suppress the hearsay [outcry] statement”
that Whitney made to Dragoo.  In a hearing outside of the presence of the jury,
Dragoo testified that soon after Whitney came to live in Dragoo’s foster home,
Whitney played games that indicated to Dragoo that Whitney “knew too much about
sex for her age.”  Specifically, Whitney played the love game, which Whitney
described as pretending to be naked in bed while kissing and touching “private
parts and stuff.”  Almost two weeks after that, Dragoo was outside playing with
Whitney when a male neighbor came outside without a shirt on.  Whitney said
that she wished the man was “naked and had no underwear on and his wife had no
bra on and they were kissing and touching people.”  Dragoo asked Whitney how
she had learned about such behavior, and Whitney said that she had learned it
from watching movies with appellant.

          A
few months later, one of the children in Dragoo’s home told Dragoo’s sister, “I
can show you where your tickle spot is.”  The child described the “tickle spot”
as the “private spot.”  The child said that Whitney had told her about the
tickle spot.  When Dragoo asked Whitney about what she had told the other
child, Whitney said that appellant had shown her the tickle spot because he
would pull her pants down and “touch [her] there.”

          At
the end of Dragoo’s testimony outside of the jury’s presence, the State urged
the trial court to find Whitney’s outcries to Dragoo to be reliable and
admissible under article 38.072 of the code of criminal procedure.  See
Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2011).  The trial court
found that the outcries were reliable.

          During
the hearing outside of the jury’s presence, appellant did not explicitly object
to Dragoo’s testimony or contest the State’s request for the trial court to
allow it.  When Dragoo testified in front of the jury, appellant objected that
the testimony about Whitney’s outcries was hearsay, and the trial court
overruled the objection.

          Hearsay
is generally inadmissible.  See Tex. R. Evid. 802.  But article 38.072
provides that a statement is not inadmissible on the basis that it is hearsay
if, in relevant part, (1) the statement describes an offense under chapter
twenty-one of the penal code that a defendant committed against a child younger
than fourteen years of age; (2) the statement was made by the child to the
first person who was eighteen years old or older, other than the defendant, that
the child spoke to about the offense; and (3) the “trial court finds, in a
hearing conducted outside the presence of the jury, that the statement is
reliable based on the time, content, and circumstances of the statement.”  Tex.
Code Crim. Proc. Ann. art. 38.072, §§ 1(1), 2; see West v. State, 121
S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref’d).  Outcry testimony
admitted in compliance with article 38.072 is considered substantive evidence,
admissible for the truth of the matter asserted in the testimony.  Duran v.
State, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.)

          “A
court’s decision that the outcry statement is reliable and admissible under
article 38.072 will not be disturbed absent a clear abuse of discretion.”  Id.;
see Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).  A trial
court abuses its discretion by admitting a statement under article 38.072 only
when the court’s decision falls outside of the zone of reasonable
disagreement.  Bautista v. State, 189 S.W.3d 365, 367 (Tex. App.—Fort
Worth 2006, pet. ref’d).

          Appellant
contends that it is “clear that there were insufficient indices of reliability
. . . of the child’s statements to be admissible through Dragoo.”[11] 
When reviewing the trial court’s determination that an outcry statement was
reliable, we consider “the time the child’s statement was made to the outcry witness,
the content of the child’s statement, and the circumstances surrounding the
making of that statement.”  Broderick v. State, 89 S.W.3d 696, 699 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d).  Indicia of reliability that a
trial court may consider include

(1) whether the child victim testifies at trial and
admits making the out-of-court statement, (2) whether the child understands the
need to tell the truth and has the ability to observe, recollect, and narrate,
(3) whether other evidence corroborates the statement, (4) whether the child
made the statement spontaneously in his own terminology or whether evidence
exists of prior prompting or manipulation by adults, (5) whether the child’s
statement is clear and unambiguous and rises to the needed level of certainty,
(6) whether the statement is consistent with other evidence, (7) whether the
statement describes an event that a child of the victim’s age could not be
expected to fabricate, (8) whether the child behaves abnormally after the
contact, (9) whether the child has a motive to fabricate the statement, (10)
whether the child expects punishment because of reporting the conduct, and (11)
whether the accused had the opportunity to commit the offense.

Norris
v. State, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref’d)
(citing Buckley v. State, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana
1988), aff’d, 786 S.W.2d 357 (Tex. Crim. App. 1990)); see In re M.R.,
243 S.W.3d 807, 813 (Tex. App.—Fort Worth 2007, no pet.).

          Whitney
testified at trial (albeit after the trial court had admitted the outcries),
and Whitney’s testimony demonstrates that she had been told to tell the truth
and that she had the ability to recollect facts that had occurred in the past. 
Although Whitney did not testify about the outcries, she did testify that appellant
had touched her on her private part, and she therefore confirmed, in part, her
statements in the outcries.

          Dragoo’s
testimony and her written reports indicated that Whitney had made the outcries
spontaneously and in her own terminology; Whitney had initially made statements
to other children in Dragoo’s home while using child-like terms such as Whitney’s
description of the “love game.”  Dragoo testified in the hearing outside of the
jury’s presence that as a foster parent, she had been trained in how to
communicate with children regarding outcry statements.

          Whitney’s
outcry about appellant’s pulling her pants down and touching her private part
was unambiguous, and we have not located evidence that is inconsistent with
this outcry.  The trial court could have reasonably determined that a child of
Whitney’s age would not have normally imagined things such as a parent’s
touching her private area or naked people kissing and touching each other.

          The
record does not disclose a motive that Whitney would have had to fabricate the
outcries.  Appellant had the opportunity to sexually abuse Whitney because he
lived with her.  Finally, the evidence establishes that Whitney was nervous
when making the outcries, that she asked Dragoo whether Dragoo was going to
tell appellant and Rebekah about one of the outcries, and that she did not want
to testify at the trial.

          Appellant
notes, among other facts, that during Whitney’s testimony, neither side
particularly asked her about the statements that she had made to Dragoo. 
Appellant also contends that Whitney’s outcries were not reliable because the
State did not present medical evidence to corroborate them.[12] 
But considering the evidence under all of the factors listed above, we conclude
that the trial court did not depart from the zone of reasonable disagreement by
determining that the outcries were reliable, and we therefore hold that the
court did not abuse its discretion by admitting the outcries.  See Tex.
Code Crim. Proc. Ann. art. 38.072, § 2(b)(2).  We overrule appellant’s third
issue.

Venue

          In
his fifth issue, appellant contends that his convictions in which Mack was the
victim (aggravated assault with a deadly weapon and one of the indecency with a
child by contact counts) should be reversed because the State failed to present
sufficient evidence to support venue in Stephens County.  Appellant’s argument
focuses on testimony by Tim Bay, a captain with the Young County
Sheriff’s Office.  Captain Bay testified that he was “pretty sure” that
appellant’s crimes toward Mack occurred in Stephens County, although the county
line “jog[s] back and forth.”  Appellant did not cross-examine Captain Bay on this
testimony.

          “To
sustain the allegation of venue, it shall only be necessary to prove by the
preponderance of the evidence that by reason of the facts in the case, the
county where such prosecution is carried on has venue.”  Tex. Code Crim. Proc.
Ann. art. 13.17 (West 2005); Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim.
App. 1964) (explaining that a venue determination will be upheld “if from the
evidence the jury may reasonably conclude that the offense was committed in the
county alleged”).  When venue was not disputed in the trial court, as it was
not disputed here, we must presume, unless the record shows to the contrary,
that venue was proved.  See Tex. R. App. P. 44.2(c)(1); Couchman v.
State, 3 S.W.3d 155, 161 (Tex. App.—Fort Worth 1999, pet. ref’d).

          Even
if the combination of the presumption under rule 44.2(c)(1) and Captain Bay’s
testimony was not sufficient to establish venue, Mack testified on more than
one occasion, without equivocation, that the crimes against him occurred in
Stephens County.  Brandy also testified that her stepgrandmother’s house, where
appellant committed the crimes against Mack, was in Stephens County.  Thus, we
hold that the State sufficiently proved venue, and we overrule appellant’s
fifth issue.

Conclusion

          Having
overruled each of appellant’s issues, we affirm all of the trial court’s
judgments.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 26, 2012 









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. §§ 21.11(a)(1), 22.011(a)(1)(A), (2)(B), 22.02(a)(2) (West 2011), § 22.021(a)(1)(B)(i),
(2)(B) (West Supp. 2012).





[3]To protect the victims’
anonymity, we will use initials and aliases to refer to some of the individuals
associated with appellant’s crimes.  See Daggett v. State, 187 S.W.3d
444, 446 n.3 (Tex. Crim. App. 2005); McClendon v. State, 643 S.W.2d 936,
936 n.1 (Tex. Crim. App. [Panel Op.] 1982).





          [4]At trial, Dr. Bates described
autism as

stereotype behaviors such as twirling or rocking or hand
clapping.  That’s one of the criteria.  Another one is failure to make eye
contact . . . .  [Autistic people] have a really hard time understanding how
other people may feel, can’t read facial gestures, [and have a] really difficult
time intermingling with other people and just relating to them on a general
level.  And then there has to be some delay in spoken language as well.





[5]Brandy knew Deputy Pruitt
because his daughter was one of Brandy’s friends.





[6]Brandy said that appellant
had threatened to kill her if she told anyone about the abuse.





[7]Brandy testified that
appellant started giving her vodka when she was ten years old.





[8]Mack had cancer.  He
testified, “[Appellant] was rubbing parts of my chest and chanting in Indian
and asked me if that had helped my chest pains. . . .  [T]he answer was
no, and it seemed to upset him just a little bit.”





[9]Mack confirmed at trial
that he was scared when he was “looking down the barrel of [the] gun.”





[10]Appellant asserts that
the trial court allowed extraneous evidence because although the State charged
appellant only with penetrating Courtney’s anus with his sexual organ, the jury
also heard evidence that he touched her breasts and vagina with his penis.





[11]Appellant does not
contend that Whitney’s statements to Dragoo were inadmissible under any
requirement of article 38.072 other than reliability.





[12]There was plentiful
evidence, however, corroborating appellant’s sexual interest in children.