# NO. 12-13-00180-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEREMY WADE HUNLEY,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jeremy Wade Hunley appeals his conviction for aggravated assault with a deadly weapon.  On appeal, Appellant presents two issues.  We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated assault with a deadly weapon, a second degree felony.  Appellant pleaded "not guilty," and the case proceeded to a jury trial.  At the conclusion of the trial, the jury found Appellant guilty of aggravated assault with a deadly weapon as charged in the indictment, and assessed his punishment at fifteen years of imprisonment.  The trial court made an affirmative finding that Appellant used or exhibited a deadly weapon, to wit, a firearm as alleged in the indictment in the commission of or immediate flight from the offense.  This appeal followed.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue on appeal, Appellant argues that the evidence is insufficient to support his conviction. More specifically, he contends that the evidence fails to establish that he acted with the requisite intent or knowledge to commit the offense.

## Standard of Review

Appellant invokes both legal and factual sufficiency review of the evidence. In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Therefore, we will review the evidence under the ***Jackson*** standard. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. ***Padilla v. State***, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. ***Id.*** Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. ***Hernandez v. State***, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

## Applicable Law

A person commits the offense of aggravated assault with a deadly weapon if the person intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02 (a)(2) (West 2011 & Supp. 2013). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *See id.* § 6.03(b) (West 2011).

Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Knight v. State*, 406 S.W.3d 578, 587 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978)). A culpable mental state may be inferred by the trier of fact from the defendant's acts, words, and conduct. *Id.* (citing *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982)). Further, it is well established that threats can be conveyed in more varied ways than merely a verbal manner, such as actions, words, and conduct. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

Although the question of whether the defendant's conduct produced fear in the victim is relevant, the crucial inquiry remains whether the defendant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility. *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). The act of threatening another occurs when the defendant actually causes fear in another, when he creates an unacceptable risk that another may be placed in fear, and when he increases the likelihood that he will carry through on a threat and cause a physical injury. *See id.* Aiming a deadly weapon at a complainant is sufficient evidence of a threat to sustain an aggravated assault conviction. *Blackwell v. State*, No. 01-12-00519-CR, 2013 WL 5604742, at *4 (Tex. App.—Houston [1st Dist.] Oct. 10, 2013, pet. ref'd) (citing *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd) ("The act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for aggravated assault."); *Ward v. State*, 113 S.W.3d 518, 521 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)).

**Analysis**

The evidence shows that Appellant lived with his wife and her three children, including Kayla, a teenager who attended Lindale High School. On August 6, 2011, Appellant, his wife, Kayla, and Kayla's friend were at the house. Around midnight, five boys from Lindale High School "wrapped" or "toilet papered" Appellant's house. Three of the boys, Austin, Cameron, and Bobby, testified that they left the house when Kayla and her friend came outside. Then, they returned to Austin's house. At approximately 2:00 a.m., Bryan Jamieson, a junior at Lindale High School, testified that he decided to go to Austin's house. However, Austin, Cameron, and Bobby told him that he should see Kayla's house that they had "wrapped" that night. Bryan drove his truck to Austin's house, picked up the three boys, and drove to Kayla's house. He

3

testified that he drove down the street, turned in the cul-de-sac at the end of the street, and stopped his truck on the opposite side of the road from Kayla's house.

At that time, Appellant testified, his wife woke him up, saying that she heard somebody outside. He jumped up, put on his shorts, got his gun, and ran outside through the garage. He believed someone was trying to break into the house. When he got outside, he could see a truck parked at the end of his yard on the street. Appellant did not know who was in the vehicle. He walked up to the vehicle "kind of fast," towards the side of the truck. Then, he "squared up" to the truck and kept walking. When he was a few feet from the truck with the gun to his side, he yelled "What the f*** are you doing?" He did not recognize anyone in the truck and did not know how many people were in it. He denied raising the gun or putting his head or gun inside the truck. Appellant saw the driver turn, look at him, and take off rapidly, with the tires of the truck squealing. At that point, he said, he raised the gun, pointed it at the truck, and fired it four or five times. Appellant testified that the reason he fired his pistol was that he "lost it," even though he knew someone was in the truck.

According to Bryan, a minute or two after he stopped the truck, Appellant appeared to sneak up behind the truck and stand beside the driver's side window. Appellant stuck a gun in the window and said "What the f*** are you doing on my property?" Bryan stated that he looked Appellant "dead in the eye," saw the gun, and "freaked" out. He was very scared and very threatened when he saw the gun. None of the other boys testified that they saw Appellant holding a gun. Bryan "stomped" the accelerator pedal and drove away. He testified that Appellant appeared to step to the side, pointed right at the truck, and shot his gun five times into the truck. Bryan watched the flashes of the gunfire from his side view mirror, and the three other boys reported that they saw flashes of gunfire. Bryan stated that when Appellant fired the gun, he felt very threatened and very scared. His friends "freak[ed] out," and dropped to the floorboard. Bryan stated that one of his friends, Cameron, was hit by a piece of metal.

Even though Bryan admitted that no one in the truck was hit by gunfire, his truck sustained three bullet holes. He also said that bullets or bullet jackets were found in the rear axle cap and under the truck. A deputy from the Smith County Sheriff's Department stated that he discovered a copper jacket from a bullet lying on the steering column in the engine compartment on the driver's side of Bryan's truck. Three shell casings were discovered directly across the street from Appellant's house.

Appellant's wife testified that when Appellant returned to the house, he vomited and appeared "pale, pasty, kind of sweaty." After the boys returned to Austin's house, Bryan called Kayla and spoke to Appellant's wife. While he was speaking to Appellant's wife about the damage to his truck, he heard Appellant yell, "I wished I would have killed all of them." However, in his statement to police, he quoted Appellant as saying "They should have been dead anyway." Bryan's friend, Austin, testified that he heard Appellant in the background yelling "he wished he would have killed every one of those m*****f*****s." Appellant denied saying that he wished he would have killed them all. According to Appellant, he said "Oh my God. I could have killed those m*****f*****s."

**Conclusion**

Viewed in the light most favorable to the verdict, the evidence shows Appellant confronted Bryan, sticking his head and gun in the truck and asking him "[w]hat the f*** are you doing on my property[.]" Bryan viewed these actions and words as threatening and frightening, which caused him to rapidly drive away. Then, Appellant fired four or five gunshots at the truck, hitting it at least three times. Bryan reported that he was very threatened and very frightened by Appellant's conduct. From this evidence, the jury reasonably could have concluded that Appellant's actions, words, and conduct actually caused fear in Bryan and posed an immediate threat of danger to him. *See Olivas*, 203 S.W.3d at 347. Further, Bryan's testimony indicated that Appellant aimed his gun at him. *See Blackwell*, 2013 WL 5604742, at *4. Appellant's decision to fire at Bryan's truck multiple times even though he knew someone was in the truck reveals his knowledge about his conduct. From this evidence, a rational jury could have inferred that Appellant knew or reasonably believed Bryan would regard his conduct as threatening him with imminent bodily injury. Therefore, we conclude that the jury reasonably could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). Accordingly, we overrule Appellant's first issue.

**EVIDENTIARY RULING**

In his second issue, Appellant contends that the trial court abused its discretion by admitting into evidence a conviction that was more than ten years old in violation of Rule 609(b) of the Texas Rules of Evidence. During the punishment phase of the trial, the State cross-examined one of Appellant's character witnesses, William Law, as follows:

Q:      Let me ask you this, Mr. Law:  Did you ever live in Edmond?

A:      Uh-huh.

Q:      Were you – let me ask you this: Were you convicted in 1999 of assault causing bodily injury to a family member?

A:      Yes, I was.

Q:      And who was that family member that you were convicted of assaulting?

A:      I believe it was my girlfriend, Veronica Webb, I believe.

At that point, Appellant's attorney asked to approach the bench and said that he realized the State was offering the conviction to impeach the witness.  However, he objected because the conviction was over ten years old and, therefore, inadmissible.  Appellant's attorney also admitted that "the cat's out of the bag."  After conducting a balancing test as required by Rule 609 of the Texas Rules of Evidence, the trial court determined that in the interest of justice the probative value of Law's conviction substantially outweighed its prejudicial effect.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint.  *See* TEX. R. APP. P. 33.1(a)(1)(A).  A defendant must also make a timely objection in order to preserve an error in the admission of evidence.  ***Dinkins v. State***, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). An objection should be made as soon as the ground for objection becomes apparent.  ***Id.***  In general, this occurs when the evidence is admitted.  ***Id.***  Therefore, if a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds.  ***Id.***

Here, the record shows that Appellant did not object until after the State questioned the witness, Law, concerning this conviction and Law admitted to it.  Because Appellant did not object to the admission of evidence until after the State's question called for an objectionable response, his objection was untimely and he has waived his complaint on appeal.  *See* TEX. R.

6

APP. P. 33.1(a)(1)(A); *Dinkins*, 894 S.W.2d at 355.  Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled both of Appellant's issues, we ***affirm*** the judgment of the trial court.

SAM GRIFFITH
Justice

Opinion delivered March 31, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2014**

**NO. 12-13-00180-CR**

**JEREMY WADE HUNLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0270-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*